UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SHERRY J. WEIGEL,

      Plaintiff,

v.                                     Case No. 5:13cv259/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____/

## MEMORANDUM ORDER

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Sherry J. Weigel's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34.  Pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73, the parties have consented to Magistrate Judge jurisdiction for all proceedings in this case, including entry of final judgment.

Upon review of the record before this court, I conclude that the Administrative Law Judge's ("ALJ") decision is not based upon substantial evidence.  The decision of the Commissioner, therefore, should be remanded to the ALJ for additional proceedings consistent with this order.

## ISSUES ON REVIEW

Ms. Weigel, who will be referred to as claimant, plaintiff, or by name, raises four issues.  She claims: 1) the ALJ erred in finding a gap in the treatment records;

2) the ALJ erred in finding plaintiff's headaches to be a nonsevere impairment and failing to consider plaintiff's headaches in the residual functional capacity determination; 3) the ALJ erred in rejecting the opinion of the treating physician; and 4) the ALJ erred in finding the plaintiff was not credible.  (Doc. 23).

## PROCEDURAL HISTORY

Ms. Weigel filed for disability insurance benefits on March 25, 2010, alleging disability beginning on December 21, 2007.  T. 190.[1]  The claim was denied on June 15, 2010; the denial was upheld on reconsideration.  T. 74-75.  Claimant appeared before the ALJ for a hearing on September 22, 2011.  T. 27.  On January 6, 2012, the ALJ issued a decision denying claimant's application for benefits.  T. 12-21.  The Appeals Council denied claimant's request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1.  Ms. Weigel instituted this action, challenging the Commissioner's decision.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relevant to the issues raised in this appeal:

• Claimant last met the insured status requirements of the Social Security Act on March 31, 2009.  T. 14.

• Through the date last insured ("DLI"), claimant had the following severe impairments: fibromyalgia.  T. 15.

• Through the DLI, claimant had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b).  T. 16.

---

[1] The administrative record, as filed by the Commissioner, consists of thirteen volumes (docs. 15-1 through 15-9), and has 501 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

•      Through the DLI, claimant was capable of performing past relevant work as a contact clerk, data entry clerk, and clerk typist.  This work did not require the performance of work-related activities precluded by claimant's residual functional capacity.  T. 20.

•      Claimant was not under a disability, as defined in the Social Security Act, at any time from December 21, 2007, the alleged onset date, through March 31, 2009, the DLI.  T. 21.

<u>STANDARD OF REVIEW</u>

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at1439).  Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by

substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record."  *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1.   If  the claimant is performing substantial gainful activity, she is not disabled.

2.   If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.   If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.[3]

5.  Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

---

[3] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir.  1986).

## FACT BACKGROUND AND MEDICAL HISTORY[4]

Claimant was born on September 10, 1953, T. 159, and was 55 years old on March 31, 2009, the DLI.  (Doc. 23, p. 2).  Claimant testified at the hearing held before the ALJ on September 22, 2011, and revealed she has previous work experience as a nurse, a contact clerk for a gas company, and a clerk in a property appraiser's office.  T. 38-43.  Plaintiff's fibromyalgia and migraines caused her to miss work frequently and led her to stop working in 2004.  T. 43-44.  Plaintiff does not believe she could maintain full-time employment because her impairments force her to stay in bed for days at a time.  T. 47.  Ms. Weigel estimated she spent twenty days a month in bed prior to the DLI.  T. 63.  Claimant experiences five or six migraines a month, which she treats with the medication Imitrex; Imitrex was effective at treating the migraines "most of the time."  T. 48.  Fibromyalgia causes claimant deep muscle pain that varies in intensity between days.  T. 49.  James A. Clemmons, M.D., has been claimant's primary care physician since 2004, T. 43-44, and has treated her impairments with medication, prescribing Lortab for her fibromyalgia pain and, at one point, Demerol for migraine headaches.  T. 45, 52-53.

Dr. Clemmons' treatment notes reflect plaintiff's subjective complaints of pain from fibromyalgia and headaches as well as her response to different medications. In June 2007, Dr. Clemmons' records indicate claimant was diagnosed with fibromyalgia by a rheumatologist.  T. 270.  The records also indicate claimant was having a "pretty good" month and claimant's headaches were doing better with the

---

[4] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

drug Calan.  T. 270.  In July 2007, claimant reported her headaches were better but she was experiencing pain while walking.  T. 269.  The following month, Dr. Clemmons noted claimant ended up in the emergency room and was "crying in pain." T. 268.

Records from the Northwest Florida Community Hospital indicate claimant visited the emergency room with aching chest pain which claimant described as similar to her pain from fibromyalgia.  T. 249.  Claimant visited the emergency room again on September 1, 2007, reporting headaches and neck pain that lasted for two days.  T. 247.  The headaches were accompanied by nausea, vomiting, and dizziness. T. 247.

On September 20, 2007, Dr. Clemmons' notes reveal claimant was having a "pretty good month" and had only six or seven migraines.  T. 267.  Plaintiff was able to abort all the migraines early except for one that lasted two days.  T. 267.   On October 18, 2007, claimant reported she was having a "lot more migraines" but was also having good days and the Imitrex was working well.  T. 263.  On November 15, 2007, claimant indicated she had a pretty good month and her fibromyalgia was better.  T. 262.  The next month, December, claimant was suffering from pressure pain in her head that rated as a 6 to 7 on a 10 point scale.  T. 261.  On January 10, 2008, claimant rated the severity of the pain in her head as a 7 of 10; the pain increased because she "did too much." T. 260.  In February 2008, claimant's reported pain level returned to a 6 out of 10.  T. 259.  On March 13, 2008, claimant indicated her headaches were very severe, rating an 8 or 9 out of 10.  T. 258.  One of plaintiff's headaches was reported to last five days and was accompanied by nausea and vomiting.  T. 258.  Claimant's condition improved in April 2008; she reported it was

not a bad month.  T. 257.  Similarly, plaintiff indicated May was a "better month" and the severity of her headaches was 6 out of 10.  T. 256.  Claimant reported she was having a "pretty good" month in June, T. 255., and in July, her pain was "controlled well."  T. 252.

In July 2008, Dr. Clemmons completed an "Attending Physician's Statement" for Ms. Weigel's insurer.[5]  T. 253-54.  Dr. Clemmons listed Ms. Weigel's diagnosis as fibromyalgia and reported she suffered from severe pain and migraines, which were being treated with pain medication.  T. 253.  Dr. Clemmons opined that Ms. Weigel could sit for 3 hours per workday, stand for 1 hour per workday and walk for 2 hours per workday.  T. 254.  The Physician's Statement indicates plaintiff could never climb, reach above her shoulder, or operate machinery and that she could twist, bend, or stoop only occasionally.  T. 254.  Dr. Clemmons believed claimant could lift or carry no more than ten pounds and had limited ability to use her hands.  T. 254.  Dr. Clemmons concluded claimant could not maintain gainful employment or perform housework and her physical capabilities would never improve.  T. 254.

Clemmons' treatment notes from July 31, 2008, indicate plaintiff was having an average month, her fibromyalgia symptoms were "not too bad," and her pain was a "6/10." T. 251.  The next month, August, claimant's condition deteriorated; she indicated she was having a bad month, with headaches the whole month and muscle pain all over.  T. 501.  Claimant rated the severity of her condition as an 8 out of 10 every day.  Plaintiff reported another bad month in September, indicating the severity of her headaches and pain was 9 out of 10 and that she also had a bad anxiety attack.

---

[5] The form is undated but indicates Dr. Clemmons last examined Ms. Weigel on July 3, 2008. T. 253.  Dr. Clemmons examined claimant again on July 31, 2008, T. 251, which suggests the form was completed during July.

T. 500.  Similarly, in October 2008, claimant had another bad month; her headaches lasted up to four days and were rated as a 9 out of 10 in severity.   T. 499.   In November 2008, claimant indicated her headaches and fibromyalgia were "killing her" and "Lortabs do nothing anymore." T. 491.

On December 3, 2008, Dr. Clemmons completed another "Attending Physician's Statement" for claimant. T. 497-498.  Dr. Clemmons reported claimant's primary diagnosis was fibromyalgia and her secondary diagnosis was migraine headaches, which she had fifteen times a month. T. 497.  Plaintiff's condition was being treated with narcotic pain medication, including oxycodone.  T. 497.  Dr. Clemmons indicated claimant's condition had deteriorated since his July 2008 assessment, opining claimant could not sit, stand, or walk continuously for one hour in an eight-hour workday.  T. 498.  He also opined that claimant could not lift or carry any weight, nor reach above her shoulder or operate machinery.  T. 498.  The doctor concluded plaintiff could not work and her capabilities would never improve.  T. 498.

On December 22, 2008, Dr. Clemmons' treatment notes indicate claimant was having headaches that lasted for two days and were accompanied by vomiting.  T. 490.  Claimant reported the severity of her headaches was 8 out of 10.  T. 490.  On January 21, 2009, claimant reported she had fibromyalgia pain all over and the severity was 8 to 9 of 10. T. 489.  Likewise, on February 19, 2009, claimant reported it was a bad month with a lot of migraines and high pain levels rating a 9 out of 10. T. 488.  Plaintiff's aggravated symptomatology continued in March 2009; claimant reported she was having a bad month, could not sleep, and was having more headaches.  T. 487.  Claimant rated the severity of her symptoms as a 9 out of 10.  T. 487.

Dr. Clemmons completed a benefits claim form for claimant's insurer on March 19, 2009.   T. 492-496.   Dr. Clemmons indicated plaintiff was diagnosed with fibromyalgia and had been unable to work since 2004.  T. 492.  Dr. Clemmons noted claimant's course of treatment was "medical pain relief therapy," but concluded she would not be able to return to work on a part-time or full-time basis.  T. 493.  On a "current functional ability" form, Dr. Clemmons indicated claimant could perform no hours of sedentary activity, which was defined as lifting or carrying a maximum of ten pounds, walking or standing on occasion, and sitting for six out of eight hours. T. 495.  Dr. Clemmons opined claimant had limited use of her hands and could not crawl, reach above her shoulder, or push or pull objects.  T. 496.

In August 2009, Dr. Clemmons' treatment notes reveal claimant was achy all over and had headaches; the severity of her condition was rated a "9/10." T. 302.  On September 3, 2009, claimant reported she was having a rough month and her pain was a 5 to 8 out of 10.  T. 301.  Dr. Clemmons noted claimant was having another rough month in October 2009; her fibromyalgia was causing her pain all over and she suffered from headaches.  T. 300.  Plaintiff described the severity of her condition as "8/10."  T. 300.  The following month, Dr. Clemmons noted claimant had headaches lasting five days.  T. 313.  On November 30, 2009, Dr. Clemmons indicated plaintiff had a fair month with neck and back pain rated as a 7 out of 10 and only a few migraines.  T. 311.  In December 2009, Dr. Clemmons reported claimant had multi-site fibromyalgia pain rated as 7 out of 10.[6]  T. 312

---

[6] In 2010, Dr. Clemmons continued to note claimant's complaints of impairment from headaches and fibromyalgia.  T. 304-307, 310, 419-421.  Claimant's DLI, however, was March 30, 2009.  The court, therefore, will not outline Dr. Clemmons' treatment notes from 2010.

Carla M. Holloman, D.O., performed a physical consultative examination of claimant on February 21, 2011, T. 434-445, and noted Ms. Weigel had "free range of motion in all four extremities" and "[g]rip and muscle strength are 5/5 throughout." T. 436.   Dr. Holloman found claimant could lift and carry up to 20 pounds continuously (more then two-thirds of time in an 8-hour workday for 5 days a week) and 21 to 50 pounds occasionally.  T. 440.  In Dr. Holloman's opinion, Ms. Weigel could sit for eight hours without interruption, stand or walk for four hours without interruption, T. 441, and climb stairs and ramps, stoop, kneel, crouch, or crawl occasionally.  T. 443.  Based on these findings, Dr. Holloman opined claimant could perform activities such as shopping, using public transportation, preparing a simple meal, caring for her personal hygiene, and sorting files.  T. 445.

In March 2011, Dr. Clemmons completed a physical capacity evaluation form. T. 452-454.  The form indicated plaintiff could not utilize both hands for fine manipulation, lift five pounds on a repeated basis, or sit for up to six hours in a normal position.  T. 452.  Dr. Clemmons opined claimant could, in a normal work day, stand or walk for one hour and sit for one hour but could not lift any weight.  T. 453.  According to the doctor, claimant could use her hands for simple grasping but not for pushing or pulling or fine manipulation.  T. 453.  These physical limitations were attributed to "severe pain and narcotics used for pain management [for] fibromyalgia and debilitating migraines."  T. 453.  Dr. Clemmons reported "severe pain and fatigue due to fibromyalgia and frequent debilitating migraines" would cause plaintiff to "miss many days a month."  T. 452.  Considering these limitations, Dr. Clemmons concluded claimant has not been able "attend any employment on an eight-hour day, five-day a week basis" since 2004.  T. 452, 454.

Claimant's most recent recorded treatment date for her headaches, March 24, 2011, indicates she sought care from the emergency room at Jackson Hospital.  T. 478.  She described the headache as like previous ones she had experienced.  T. 478. Claimant was treated at the hospital with medication and discharged.  T. 478-485.

<u>ANALYSIS</u>

Claimant alleges the ALJ erred by: 1) finding a gap in the treatment records; 2) finding plaintiff's headaches to be a non-severe impairment and failing to consider plaintiff's headaches in the residual functional capacity determination; 3) rejecting the opinion of the treating physician, Dr. Clemmons; and 4) finding the plaintiff was not credible. (Doc. 23).  Due to claimant's submission of additional medical records, the application for benefits will be remanded to the ALJ for a reconsideration of the treatment gap, the weight afforded to the treating physician's opinion, and the determination of claimant's credibility.  The finding that claimant's migraine headaches are a nonsevere impairment, however, will be reversed, and the ALJ is directed to formulate plaintiff's residual functional capacity anew, considering claimant's headaches as a severe impairment.

After the ALJ rendered an unfavorable decision, Ms. Weigel requested review of the decision from the Appeals Council.  T. 8.  In support of claimant's request for review, additional medical records from Dr. Clemmons were provided to the Appeals Council.  T. 1-7.  Although the Appeals Council denied claimant's request for review, T. 1, these additional records should be considered by the court in determining whether the ALJ's decision is supported by substantial evidence.  *Ingram v. Comm'r Social Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must

consider whether that new evidence renders the denial of benefits erroneous.").

Plaintiff first asserts the ALJ erred by finding–and relying upon– a "gap" in the treatment records.  (Doc. 23, p. 1, 10).  The ALJ found the treatment records indicated claimant "received no treatment from Dr. Clemmons during the period August 2008 through July 2009."  T. 17.  The additional medical records submitted to the Appeals Council, however, demonstrate claimant visited Dr. Clemmons once a month from August 2008 to March 2009.[7]  T. 487-491, 499-501.  Thus, to the extent a treatment gap is reflected in the records, the same lasted from claimant's visit with Dr. Clemmons on March 19, 2009, to another visit with Dr. Clemmons in August 2009.  The purported year-long treatment gap significantly influenced the ALJ's findings on two issues as to which claimant also asserts error–the rejection of Dr. Clemmons' opinion and the rejection of claimant's subjective complaints.

Claimant contends the ALJ erred by rejecting the opinion of her treating physician, Dr. Clemmons.  (Doc. 23, p. 13-16).  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was

---

[7] Plaintiff attached additional records to her memorandum in support of the complaint indicating plaintiff actually visited Dr. Clemmons in April, May, June, and July of 2009.  (Doc. 23-1, p. 36-39).  The treatment notes from these months are not part of the administrative record but appear to have been considered by the Appeals Council.  T. 2.  It is also unclear if the Appeals Council considered the treatment notes from Dr. Clemmons for the months preceding the DLI.  T. 2.  The Appeals Council noted some of the newly submitted records were duplicative and some concerned the time period after the DLI.  T. 2.  The Appeals Council did not explicitly address whether the additional treatment notes from August 2008 to March 2009 were considered.  T. 2.

conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241.

The ALJ gave less than significant weight to Dr. Clemmons' July 2008 opinion that claimant was unable to maintain gainful employment.  T. 17.  In making this determination, the ALJ considered:

> [Dr. Clemmons'] status as the claimant's treating primary care physician; the tenure of his professional relationship with the claimant; the 12-month outpatient treatment records gap indicating that the claimant received no treatment from Dr. Clemmons during the period August 2008 through July 2009; a substantial lack of consistency between Dr. Clemmons' treatment notes indicating symptomatic improvement versus the conclusory 'unable to work' assessment contemporaneously reported to the claimant's benefits provider; the absence of clinical findings pertaining to trigger points; and the absence of substantial objective medical evidence of record supporting Dr. Clemmons' conclusory assessment rendered in July 2008.

T. 17.

Review of the evidence relating to these factors, however, lends little, if any, support to the ALJ's decision to afford less than significant weight to Dr. Clemmons' opinion.  Claimant testified Dr. Clemmons has been her treating physician since 2004, T. 43, and the medical records before the court indicate the doctor has treated plaintiff since at least 2007.  T. 263.  According to the Commissioner's regulations, Dr. Clemmons' long-term relationship with claimant likely affords him a unique insight into claimant's condition.  *See* 20 C.F.R. § 404.1527(c)(2) (2012) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of your medical impairments(s) and may bring a unique perspective to the to the medical evidence that cannot be obtained from the objective medical findings

alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

Next, the ALJ cited the purported lack of treatment between August 2008 through July 2009 as support for the decision to lend Dr. Clemmons' opinion less than significant weight.  T. 17.  As discussed above, the additional records provided to the Appeals Council indicate claimant visited Dr. Clemmons and reported problems with fibromyalgia and headaches through March 2009.  T. 487-491, 499-501.[8]

The ALJ also asserts there is a "substantial lack of consistency between Dr. Clemmons' treatment notes indicating symptomatic improvement versus the conclusory 'unable to work' assessment contemporaneously reported to the claimant's benefits provider."  T. 17.  Although Dr. Clemmons' records for the months preceding the July 2008 Attending Physician's Statement do indicate claimant's symptoms had been controlled relatively well, the chart following July 2008 indicates more severe symptoms.  For example, on December 22, 2008, Dr. Clemmons indicated claimant was experiencing headaches that lasted multiple days and were accompanied by vomiting.  T. 490.  In March 2009, the month of the DLI, claimant reported to Dr. Clemmons that she was having a bad month, could not sleep, and was having more headaches.  T. 487.  Claimant rated the severity of her symptoms as a 9 out of 10 that month.  T. 487.  The changes in the severity of claimant's subjective complaints reflected in Dr. Clemmons' records are also consistent with claimant's testimony that her symptoms varied in intensity.  T. 49, 62-63.

---

[8]The court could not fault the ALJ for relying upon the record as it existed at the time.

Another reason the ALJ cited for giving Dr. Clemmons' opinion less than significant weight was "the absence of clinical findings pertaining to trigger points." T. 17.  The identification of trigger points is a method used to diagnose fibromyalgia. *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012).  Although Dr. Clemmons did not document trigger points in his treatment notes, claimant was diagnosed with fibromyalgia by a rheumatologist.  T. 269.  Additionally, the absence of findings pertaining to trigger points does not undermine Dr. Clemmons' opinions concerning the severity of claimant's headaches and the limitations therefrom.

Finally, the ALJ noted the "absence of substantial objective medical evidence of record supporting Dr. Clemmons' conclusory assessment rendered in July 2008." T. 17.  As an initial matter, Dr. Clemmons was claimant's only treating physician in the time period immediately preceding the DLI, although Dr. Holloman did conduct a consultative examination of claimant in 2011.  The ALJ, however, gave less than significant weight to Dr. Holloman's assessment "because it reveals no new and material information relevant to the nature and extent of her alleged impairments prior to April 1, 2009.  T. 18.  For better or worse here, claimant's impairments, fibromyalgia and migraines, are, by the case law, not readily identifiable by objective medical evidence.

In regard to fibromyalgia, the Eleventh Circuit has recognized that the condition "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The court has gone so far as to note that the "hallmark" of fibromyalgia is "a lack of objective evidence." *Id*.  The Eleventh Circuit has also observed that "[t]he lack of objective clinical findings [of fibromyalgia] is . . .

insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations." *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010) (*citing Green-Younger v. Barnhart*, 335 F.3d 99, 105-08 (2d Cir. 2003)).  Similarly, a plaintiff's subjective complaints of fibromyalgia's effects cannot be discredited solely on the lack of objective findings. *See Moore*, 405 F.3d at 1212 (finding claimant's complaints of fibromyalgia can be discredited only when based on facts other than lack of objective evidence).  The lack of objective findings in fibromyalgia cases, though, means a determination of the condition's effects hinges largely on the credibility of the plaintiff. *See Somogy*, 366 F. App'x at 64 ("Given the nature of fibromyalgia, a claimant's subjective complaints of pain are often the only means of determining the severity of a patient's condition and the functional limitations caused thereby.").[9]  Similarly, the lack of objective medical evidence confirming the existence of claimant's migraine headaches is insufficient to discount Dr. Clemmons' opinion concerning the severity of the headaches. *See Hewett v. Astrue*, 2010 WL 940982, *11 (N.D. Fla. March 12, 2010) (concluding "the lack of objective medical test results confirming an organic cause of Plaintiff's migraine or tension headaches, and the fact [the doctor] had only Plaintiff's subjective

---

[9] I am cognizant that not every judge within the boundaries of the Eleventh Circuit has internalized the view of that court:

> Disability cases now frequently involve one of these two relative newcomers to the lexicon of etiology, "fibromyalgia" and "chronic pain syndrome".  I do not believe that this circuit's case law supports a different standard of evaluation for them, however, nor are they in any way "universally recognized" as severe disabling conditions.

*Lee v. BellSouth Telecomms., Inc.*, 318 F. App'x 829, 841 n.1 (11th Cir. 2009) (Vinson, J., concurring *dubitante*).  The undersigned is constrained by the case law, but observes that an uncertain demarcation perhaps exists between the legal characterization of certain conditions and the medical consensus regarding those conditions.

report of symptoms upon which to base his assessment, is not an adequate reason to disregard [the doctor's] opinion").

Because the severity of claimant's fibromyalgia and headaches cannot be confirmed by objective medical evidence, the court must consider the ALJ's determination of claimant's credibility. "Credibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212 (*citing Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). If the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain, she must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). Of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Concerning claimant's credibility, the ALJ noted the following:

The undersigned finds that the claimant's statements concerning her impairments and their impact on her ability to work prior to April 1, 2009, are only partially credible. The quantitative and qualitative profile of the claimant's medical treatment record has been significantly less than what one would reasonably expect in the case of a person with debilitating symptoms. Notably, the above-discussed gap in treatment notes indicates that the claimant ostensibly sought no medical treatment during the 8-month period prior to her date last insured and for at least 4 months following her date last insured. After careful consideration of the overall evidence of record, the undersigned finds–subject to the foregoing–that fibromyalgia could reasonably be expected to cause the claimant's reported mild-to-moderate subjective pain; however, the

claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are <u>not</u> credible to the extent that they are inconsistent with the undersigned's above residual functional capacity assessment.

T. 20 (emphasis in original).  Thus, the ALJ's credibility determination was based on the ALJ's belief claimant had not sought treatment for her impairments for one year. As discussed previously, however, claimant did seek treatment during the period preceding the DLI.   Claimant was prescribed various medications to treat her headaches, including Calan and Imitrex.  T. 48, 270.  Although claimant indicated Imitrex provided her relief "most of the time," T. 48, she also stated her headaches were severe enough to leave her bed-ridden five or six times per month.  T. 62-63.

Similarly, claimant's testimony regarding her activities of daily living also does not provide support for the credibility determination.  The ALJ's decision indicates "claimant performs light aerobic exercises" and "household chores that include cooking and laundry."  T. 16.  Claimant's testimony at the ALJ hearing indicated plaintiff occasionally performed stretches in her sister's pool during the summertime, could cook simple meals, and wash a load of laundry.  T. 55.  This testimony does not suggest claimant was consistently engaging in activity that undermines her subjective complaints, particularly when claimant indicated her symptoms varied in intensity.   The court, therefore, finds the ALJ's credibility determination is not supported by substantial evidence.

Claimant's final assertion is the ALJ erred by classifying claimant's headaches as a nonsevere impairment.  (Doc. 23, p. 11-13). The step two severity determination is a threshold inquiry used to screen out "trivial" claims, meaning an impairment is not severe "only if it is a slight abnormality which has such a minimal effect on the

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also Bowen v. Yuckert*, 482 U.S. 137, 145 n.5 (1987); *Stratton v. Bowen*, 827 F.2d 1447, 1453 (11th Cir. 1987); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  As construed by the Eleventh Circuit, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.  Claimant need show only that her impairment is not so slight and its effect is not so minimal." *McDaniel*, 800 F.2d at 1031.  Emphasizing the threshold nature of the step two finding, the *McDaniel* court observed that the proper standard "allows only claims based upon the most trivial impairments to be rejected." *See id.*  Accordingly, "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." *Stratton*, 827 F.2d at 1452 n.9 (*quoting Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir. 1985)).

Here, the ALJ concluded plaintiff's migraine headaches were a nonsevere impairment because they "had minimal (if any) limiting effects on the claimant's ability to perform work activities." T. 15.  Plaintiff, however, consistently reported painful migraines accompanied by nausea and vomiting that lasted for multiple days.  The medical records indicate claimant sought treatment in the emergency room for her headaches. T. 247, 478.  Additionally, plaintiff tried several different medications to treat her migraines.  T. 48, 257, 270.  Although claimant indicated at the ALJ hearing that one medication, Imitrex, was effective at treating her migraines most of the time, this medication did not always offer relief. T. 48.  Moreover, Imitrex is

taken at the onset of a migraine and does not prevent the occurrence of a headache. T. 48. Because plaintiff's migraines lasted multiple days, caused her to visit the emergency room, and were accompanied by nausea and vomiting, they cannot be considered nonsevere. The court, therefore, concludes the ALJ erred by finding claimant's headaches were a nonsevere impairment. When reformulating claimant's residual functional capacity, the ALJ must consider whether claimant's migraines would cause her to miss more than three days of work a month, which, according to the vocational expert, would make an individual unemployable. T. 66-67.

<u>CONCLUSION</u>

In sum, the ALJ's finding that claimant was not disabled was based in large part on the alleged treatment gap surrounding the DLI. The additional medical records submitted to the Appeals Council, however, indicate there was no substantial treatment gap. The court concludes the ALJ's findings concerning the treatment gap, claimant's credibility, and the weight given to Dr. Clemmons' opinion are not supported by substantial evidence. On remand, the ALJ must consider the additional medical records submitted to the Appeals Council by claimant.

Accordingly, it is ORDERED:

The Commissioner's decision should be set aside, and the matter REMANDED for further proceedings consistent with this order.

At Pensacola, Florida, this 24th day of December, 2014.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**